OPINION OF THE COURT
Joyce L. Sparrow, J.
Before the court is a petition filed under the Uniform Support of Dependents Law on June 1, 1988 by the Department of Social Services of Mercer County, New Jersey on behalf of Imogene T. The petitioner seeks an order of filiation *704 to declare the respondent, Alf M., the father of Kandice T., born on April 13,1985, and an order of support on her behalf.
The hearing, at which both the mother, respondent, and Dr. Karl Hans Worzinger, an Associate Director of Paternity Evaluation for Roche Labs, testified, commenced on July 8, 1992 in Queens County Family Court. Kandice’s birth records, the respondent’s birth certificate and the results of HLA and DNA tests were admitted into evidence.
This matter involves a fairly simple factual scenario. Both petitioner and respondent, neither of whom have ever been married, testified that they engaged in sexual relations during the month of July 1984. Kandice was born approximately nine months later, in April 1985. The blood tests indicate that the probability that the respondent, Alf M., is the father of Kandice T. is 99.22% as compared to an untested, unrelated man of the North American Black population. Dr. Worzinger, an expert in genetics and paternity evaluation, testified that there is a 127 to 1 chance that the respondent is the father and explained the testing procedures. Based on the evidence presented, respondent’s paternity was established by clear and convincing evidence.
Respondent claims that the sexual relations which resulted in the child’s birth were nonconsensual. This court gives no credit to respondent’s testimony that he was forced to have sex with the mother. He also raises the issue of legal consent, since intercourse occurred when the mother was 21 years old and the respondent was only 16 years old, thereby raising the claim that he was a victim of the statutory crime of rape in the third degree. (See, Penal Law §§ 130.25, 130.05.)
The question facing this court is whether a person below the age of legal consent for sexual intercourse and therefore technically a victim of statutory rape should be legally responsible for the child resulting from that union.
The issue raised is clearly one of first impression in New York State. However, other defenses to the entry of an order of filiation or support have been raised and addressed by New York courts. An analysis of the statutory and case law indicates that New York public policy strongly favors legitimization and protection of children. (Family Ct Act art 5; Matter of L. Pamela P. v Frank S., 59 NY2d 1; Matter of Department of Social Servs. v Jay W., 105 AD2d 19.)
The Court of Appeals in Matter of L. Pamela P. v Frank S. (supra) held that wrongful conduct of one of the parents in *705 causing conception does not in any way alter the parental obligation to support the child. In that matter, the mother intentionally misrepresented that she was using birth control and the father claimed he was deprived of his constitutional right to decide whether to father a child. The Court decided that a person may not avoid his/her child support obligation simply because another private person has not fully respected his desire to use birth control.
Continuing that line of reasoning, the Second Department has ruled that the mentally handicapped condition of a putative father, which precludes his consent to fathering a child, is not relevant in a paternity proceeding; rather the welfare of the child is paramount. (Matter of Department of Social Servs. v Victor A. R., 120 AD2d 526.)
Similarly, in Matter of Weinberg v Omar E. (106 AD2d 448), the Second Department held that "The age of a putative father is irrelevant to a paternity proceeding and minority will not excuse his obligation to support the child * * * The primary purpose of a paternity proceeding is to protect the welfare of the illegitimate child and, accordingly, the mother’s conduct should have no bearing on the father’s duty of support nor upon the manner in which the parents’ respective obligations are determined.”
The Third Department has examined the issue of rape committed by the petitioner father and found that petitioner is not merely looking to benefit from his wrongdoing, but desiring to assume the responsibility of supporting the child. (Matter of Craig V. v Mia W., 116 AD2d 130, lv denied 69 NY2d 602.) In that matter, the Court found that the father, although he committed the felony of rape in the third degree, did not forfeit his right to establish paternity.
For a defense to an order of filiation or support to succeed, the Court of Appeals has made it clear that it must constitute a constitutional violation superior to the public policy interest of the child. (Matter of L. Pamela P. v Frank S., supra.) The respondent has failed to make such a showing.
Respondent father’s recourse under the law as to the mother of the child in this matter, was to file criminal charges against her. To penalize this child for the mother’s actions would run contrary to the fundamental purpose of this proceeding as established by statutory and case law. This court is not concerned with the child’s mother’s actions but rather protecting the best interests of and insuring that adequate *706 provision will be made for the child’s needs. (Matter of Magliocca v Magliocca, 156 AD2d 367; Matter of Brescia v Fitts, 56 NY2d 132.)
Accordingly, an order of filiation is granted and respondent is legally declared the father of Kandice T. and is responsible for her support. This matter is referred to Hearing Examiner B on October 27, 1992 to determine respondent’s support obligation which dates back to the original filing of the petition. (Family Ct Act § 449.)