No. 67,978

STATE OF KANSAS, *ex rel.*, COLLEEN HERMESMANN, *Appellee*, v. SHANE SEYER, a minor, and DAN and MARY SEYER, his parents, *Appellants.*

(847 P.2d 1273)

Opinion filed March 5, 1993.

*Ronald P. Pope*, of Eugene B. Ralston & Associates, of Topeka, argued the cause and was on the brief for appellants.

*David N. Sutton,* chief of litigation, Department of Social and Rehabilitation Services, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Shane Seyer *et al.,* appeal from an order of the district court granting the Kansas Department of Social and Rehabilitation Services (SRS) judgment for amounts paid for the birth and support of Seyer's daughter and ordering Seyer to pay monthly child support reimbursement to SRS.

The facts, as best we can determine them from an inadequate record, do not appear to be seriously in dispute.

Colleen Hermesmann routinely provided care for Shane Seyer as a baby sitter or day care provider during 1987 and 1988. The two began a sexual relationship at a time when Colleen was 16 years old and Shane was only 12. The relationship continued over a period of several months and the parties engaged in sexual intercourse on an average of a couple of times a week. As a result, a daughter, Melanie, was born to Colleen on May 30, 1989. At the time of the conception of the child, Shane was 13 years old and Colleen was 17. Colleen applied for and received financial assistance through the Aid to Families with Dependent Children program (ADC) from SRS.

On January 15, 1991, the district attorney's office of Shawnee County filed a petition requesting that Colleen Hermesmann be adjudicated as a juvenile offender for engaging in the act of sexual intercourse with a child under the age of 16, Shanandoah (Shane) Seyer, to whom she was not married, in violation of K.S.A. 1992 Supp. 21-3503. Thereafter, Colleen Hermesmann entered into a plea agreement with the district attorney's office, wherein she agreed to stipulate to the lesser offense of contributing to a child's misconduct, K.S.A. 1992 Supp. 21-3612. On September 11, 1991, the juvenile court accepted the stipulation, and adjudicated Colleen Hermesmann to be a juvenile offender.

On March 8, 1991, SRS filed a petition on behalf of Colleen Hermesmann, alleging that Shane Seyer was the father of Colleen's minor daughter, Melanie. The petition also alleged that SRS had provided benefits through the ADC program to Colleen on behalf of the child and that Colleen had assigned support

rights due herself and her child to SRS. The petition requested that the court determine paternity and order Shane to reimburse SRS for all assistance expended by SRS on Melanie's behalf. On December 17, 1991, an administrative hearing officer found Shane was Melanie's biological father. The hearing officer further determined that Shane was not required to pay the birth expenses or any of the child support expenses up to the date of the hearing on December 17, 1991, but that Shane had a duty to support the child from the date of the hearing forward.

Shane requested judicial review of the decision of the hearing officer, contending that the hearing officer "should have found a failure of consent would terminate rights." SRS sought review, asserting that the hearing officer correctly ruled that the issue of consent was irrelevant, but erred in allowing Shane to present evidence pertaining to the defense of consent. SRS also alleged that the hearing officer's denial of reimbursement to the State for funds already paid was arbitrary and capricious and contrary to the mandates of K.S.A. 1992 Supp. 39-718b.

The district judge, upon judicial review of the hearing officer's order, determined that Shane was the father of Melanie Hermesmann and owed a duty to support his child, stating:

"Okay. I'm ready to rule. It's my view in this case that the Hearing Officer's ruling, which essentially is that a minor may be held legally liable to provide reimbursement to the State of Kansas under K.S.A. 39-701 *et seq.*, is a correct ruling of law and that the issues of consent and the criminal case and so forth are not really relevant in a paternity proceeding, which we're talking about, civil liability to support a child.

"Second, I'm going to hold that the State, by proceeding under 39-701 *et seq.*, that there is no discretion in the Court regarding liability. The courts, I believe, are ministerial at that point and are the vehicle for SRS to collect the support and it was error for the Hearing Officer not to assess all of the monies paid jointly and severally liable against both of the parents of this child.

"And so I would enter a judgment for all of the SRS reimbursement against Colleen Hermesmann and Shane Seyer jointly and severally for the six thousand plus."

The court found that the issue of Shane's consent was irrelevant and ordered Shane to pay child support of $50 per month. The court also granted SRS a joint and several judgment against Shane and Colleen in the amount of $7,068, for assistance provided by

the ADC program on behalf of Melanie through February 1992. The judgment included medical and other birthing expenses as well as assistance paid after Melanie's birth. Shane appeals the judgment rendered and the order for continuing support but does not contest the trial court's paternity finding. SRS has not cross-appealed from any of the orders or judgment of the district court.

This case was transferred from the Court of Appeals by this court's own motion. K.S.A. 20-3018(c).

Shane has designated three issues on appeal, which he states as follows:

"I. Can a minor, who is a victim of the crime of indecent liberties with a child, be responsible for any children conceived of the criminal union?

"II. Is it sound public policy for a court to order child support when the order creates a clash of one minor's right to protection from being the victim of a crime with another minor's right to parental support?

"III. Can a judgment ordering joint and several liability for child support be an adequate remedy when it fails to account for the wrongdoing of Plaintiff-appellee Hermesmann?"

Shane's argument on appeal is based on three basic premises. (1) Shane Seyer, as a minor under the age of 16, was unable to consent to sexual intercourse. (2) Because he was unable to consent to sexual intercourse, he cannot be held responsible for the birth of his child. (3) Because he cannot be held responsible for the birth, he cannot be held jointly and severally liable for the child's support.

Shane asserts as his first issue that, because he was a minor under the age of 16 at the time of conception, he was legally incapable of consenting to sexual intercourse and therefore cannot be held legally responsible for the birth of his child. Shane cites no case law to directly support this proposition. Instead, he argues that Colleen Hermesmann sexually assaulted him, that he was the victim of the crime of statutory rape, and that the criminal statute of indecent liberties with a child should be applied to hold him incapable of consenting to the act.

What used to be commonly called "statutory rape" is now included in the statutory crime of indecent liberties with a child. The statute, K.S.A. 1992 Supp. 21-3503, reads in pertinent part:

"(1) Indecent liberties with a child is engaging in any of the following acts with a child who is under 16 years of age:

(a) Sexual intercourse."

Both the administrative hearing officer and the district court determined that whether Shane consented to sexual intercourse was not a relevant issue in a civil paternity and child support proceeding.

SRS maintains that Shane was not the victim of the crime of statutory rape. SRS points out that while Colleen was originally charged in juvenile proceedings with a violation of K.S.A. 1992 Supp. 21-3503, she later stipulated to a lesser charge of contributing to a child's misconduct, K.S.A. 1992 Supp. 21-3612. While SRS is technically correct in asserting that Colleen was never found guilty of violating 21-3503, its entire case is based upon the fact that Shane is the father of the child. As it is undisputed that Shane was under the age of 16 when conception occurred, and throughout the entire time the sexual relationship continued, the argument of SRS is specious at best. The admitted facts established, without doubt, all of the elements necessary to prove a crime under K.S.A. 1992 Supp. 21-3503(1)(a), and the fact that Colleen was able to plea bargain for a lesser offense does not preclude Shane from alleging he was a "victim" of statutory rape.

Although the issue of whether an underage alleged "victim" of a sex crime can be held liable for support of a child born as a result of such crime is one of first impression in Kansas, other jurisdictions have addressed the question.

In *In re Paternity of J.L.H.*, 149 Wis. 2d 349, 441 N.W.2d 273 (1989), J.J.G. appealed from a summary judgment in a paternity proceeding determining that he was the father of J.L.H. and ordering him to pay child support equal to 17 percent of his gross income. J.J.G. was 15 years old when the child was conceived. On appeal, he asserted that the child's mother, L.H., sexually assaulted him, contrary to Wis. Stat. § 940.225(2)(e) (1979) (the Wisconsin statutory rape statute in effect at the time), and that, as a minor, he was incapable of consent under the sexual assault law. The court rejected this argument and stated:

"The assumption underlying appellant's opposition to the motion for summary judgment is that a putative father in a paternity action has a defense if the sexual intercourse occurred without his consent. The amended civil complaint which his opposing affidavit incorporates alleges that the child born to L.H. was 'the result of nonconsensual sexual assault in violation of

sec. 940.225(2)(e), Wis. Stats.' . . . . That statute provides that it is a felony for a person to have 'sexual intercourse with a person who is over the age of 12 years and under the age of 18 years without consent of that person, as consent is defined in sub. (4).' Subsection (4) provides:

'Consent' as used in this section, means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact. A person under 15 years of age is incapable of consent as a matter of law. The following persons are presumed incapable of consent but the presumption may be rebutted by competent evidence, subject to the provisions of s. 972.11(2):

(a) a person who is 15 to 17 years of age . . . .'

. . . .

"We reject appellant's assertion that because he was fifteen years old when he had intercourse with L.H., he was incapable of consent. The assertion rests on the argument that sec. 940.225(4)(a), Stats. 1979, created a rebuttable presumption to that effect. That statute pertains to the guilt of a criminal defendant, not to the civil rights or duties of the victim. Paternity actions are civil proceedings. *State ex rel. Lyons v. DeValk*, 47 Wis. 2d 200, 203, 177 N.W.2d 106, 107 (1970). The presumption created by sec. 940.225(4)(a) does not apply in this proceeding." 149 Wis. 2d at 355-57.

The court then goes on to state:

"If voluntary intercourse results in parenthood, then for purposes of child support, the parenthood is voluntary. This is true even if a fifteen-year old boy's parenthood resulted from a sexual assault upon him within the meaning of the criminal law." 149 Wis. 2d at 360.

Although the question of whether the intercourse with Colleen was "voluntary," as the term is usually understood, is not specifically before us, it was brought out in oral argument before this court that the sexual relationship between Shane and his baby sitter, Colleen, started when he was only 12 years old and lasted over a period of several months. At no time did Shane register any complaint to his parents about the sexual liaison with Colleen.

In *Schierenbeck v. Minor*, 148 Colo. 582, 367 P.2d 333 (1961), Schierenbeck, a 16-year-old boy, appealed the adjudication in a dependency proceeding that he was the father of a child born to a 20-year-old woman. On appeal, Schierenbeck cited a Colorado criminal statute which defined rape in the third degree by a female of a male person under the age of 18 years. In discussing the relevance of the criminal statute, the court stated:

"Certain it is that [Schierenbeck's] his assent to the illicit act does not exclude commission of the statutory crime, but it has nothing to do with assent as relating to progeny. His youth is basic to the crime; it is not a factor in the question of whether he is the father of [the child].

" 'The putative father may be liable in bastardy proceedings for the support and maintenance of his child, even though he is a minor. . . .' Bastards, 10 C.J.S. 152, § 53. If Schierenbeck is adjudged to be the father of [the child] after a proper hearing and upon sufficient evidence, he should support [the child] under this fundamental doctrine." 148 Colo. at 586.

The trial court decision was reversed on other grounds not pertinent to the facts of our case and remanded for further proceedings.

The Kansas Parentage Act, K.S.A. 38-1110 *et seq.*, specifically contemplates minors as fathers and makes no exception for minor parents regarding their duty to support and educate their child. K.S.A. 38-1117 provides, in part:

"If a man alleged or presumed to be the father is a minor, the court shall cause notice of the pendency of the proceedings and copies of the pleadings on file to be served upon the parents or guardian of the minor and shall appoint a guardian ad litem who shall be an attorney to represent the minor in the proceedings."

K.S.A. 1992 Supp. 38-1121(c) provides, in part:

"Upon adjudging that a party is the parent of a minor child, the court shall make provision for support and education of the child including the necessary medical expenses incident to the birth of the child. The court may order the support and education expenses to be paid by either or both parents for the minor child."

If the legislature had wanted to exclude minor parents from responsibility for support, it could easily have done so.

As previously stated, Shane does not contest that he is the biological father of the child. As a father, he has a common-law duty, as well as a statutory duty, to support his minor child. *Keller v. Guernsey,* 227 Kan. 480, 486, 608 P.2d 896 (1980); *Strecker v. Wilkinson,* 220 Kan. 292, 298, 552 P.2d 979 (1976); *Grimes v. Grimes,* 179 Kan. 340, 343, 295 P.2d 646 (1956). This duty applies equally to parents of children born out of wedlock. *Huss v. DeMott,* 215 Kan. 450, 524 P.2d 743 (1974); *Doughty v. Engler,* 112 Kan. 583, 585, 211 Pac. 619 (1923).

Under the statutory and common law of this state, Shane owes a duty to support his minor child. K.S.A. 1992 Supp. 21-3503

does not apply to a civil proceeding and cannot serve to relieve Shane of his legal responsibilities towards his child. Shane relies upon six cases to support his position: *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988); *State v. Hutchcraft*, 242 Kan. 55, 744 P.2d 849 (1987); *State v. Lilley*, 231 Kan. 694, 647 P.2d 1323 (1982); *State v. Price*, 215 Kan. 718, 529 P.2d 85 (1974); *State v. Eberline*, 47 Kan. 155, 27 Pac. 839 (1891); *State v. Fulcher*, 12 Kan. App. 2d 169, 737 P.2d 61 (1987). Each of these cases involves the age of consent issue under the Kansas statutory rape law and its present equivalent. We conclude that the issue of consent to sexual activity under the criminal statutes is irrelevant in a civil action to determine paternity and for support of the minor child of such activity. Consequently, Shane's reliance on the foregoing criminal cases is misplaced.

For Shane's next issue, he asserts that it is not sound public policy for a court to order a youth to pay child support for a child conceived during the crime of indecent liberties with a child when the victim was unable to consent to the sexual intercourse. He claims that while the Kansas Parentage Act creates a State interest in the welfare of dependent relatives, the policy behind the Parentage Act is not to force a minor, who is unable to consent to sexual intercourse, to support a child born from the criminal act.

Shane provides no case law specifically on point, but once again relies upon the Kansas cases involving statutory rape. He also refers the court to K.S.A. 39-718a, which authorized the Secretary of SRS to collect child support from an absent parent. Shane suggests that underlying K.S.A. 39-718a is the presumption that a parent consented to the conception, and argues that the proper remedy for SRS in this case is to seek support exclusively from Colleen Hermesmann, as she was the only parent legally able to consent to the conception of the child. What Shane has failed to recognize, however, is that K.S.A. 39-718a was repealed by the legislature in 1988. L. 1988, ch. 218, § 6. Any argument based upon a statute which was repealed five years ago is obviously without merit.

However, the argument of two allegedly conflicting public policies of this state does merit consideration. Other jurisdictions have recognized the conflict between a State's interest in pro-

tecting juveniles and a State's interest in requiring parental support of children. In *In re Parentage of J.S.*, 193 Ill. App. 3d 563, 550 N.E.2d 257 (1990), the trial court ordered a minor father to pay child support for his illegitimate son. The minor father appealed the order, but did not contest the trial court's paternity finding. In affirming the trial court's decision ordering support, the court stated:

"The respondent initially argues that he should not be required to support his child, because he was a 15-year-old minor when the child was conceived. He contends that Illinois public policy protects minors from the consequences of their improvident conduct.

"We note that contrary to the respondent's position, Illinois public policy has never offered blanket protection to reckless minors. [Citations omitted.] At the same time, Illinois public policy has recognized the blanket right of every child to the physical, mental, emotional, and monetary support of his or her parents. (Ill. Rev. Stat. 1987, ch. 40, par. 2501.1.) The public has an interest in protecting children from becoming wards of the State. *In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 480 N.E.2d 1283.

"In the instant case, *we find that the public policy mandating parental support of children overrides any policy of protecting a minor from improvident acts.* We therefore hold that the trial court properly found that the respondent was financially responsible for his child." (Emphasis added.) 193 Ill. App. 3d at 565.

In *Commonwealth v. A Juvenile*, 387 Mass. 678, 442 N.E.2d 1155 (1982), a 16-year-old father was ordered to pay child support of $8 a week toward the support of his child born out of wedlock. The minor father admitted his paternity, but appealed the support order. On appeal, the court affirmed the judgment of the lower court and said:

"The defendant's claim rests on an assertion that a support order is inconsistent with the statutory purpose of treating a juvenile defendant as a child 'in need of aid, encouragement and guidance.' [Citation omitted.] Although we acknowledge that purpose, we see no basis, and certainly no statutory basis, for concluding that a juvenile should be free from any duty to support his or her illegitimate child. The illegitimate child has interests, as does the Commonwealth." 387 Mass. at 680.

This State's interest in requiring minor parents to support their children overrides the State's competing interest in protecting juveniles from improvident acts, even when such acts may include criminal activity on the part of the other parent. Considering the three persons directly involved, Shane, Colleen, and Melanie,

the interests of Melanie are superior, as a matter of public policy, to those of either or both of her parents. This minor child, the only truly innocent party, is entitled to support from both her parents regardless of their ages.

As his third issue, Shane asserts that the district court erred in finding he and Colleen were jointly and severally liable for the child support. He argues that, as Colleen was the perpetrator of the crime of statutory rape, she alone should be held responsible for the consequences of the act, and he requests this court to remand the case to the district court with instructions to order Colleen solely responsible for the support pursuant to K.S.A. 39-718a. He states that K.S.A. 39-701 *et seq.* does not require a judgment ordering joint and several liability for child support.

Once again, Shane's reliance upon K.S.A. 39-718a is improper. This statute was repealed in 1988. L. 1988, ch. 218, § 6. The controlling statute, as SRS points out, is K.S.A. 1992 Supp. 39-718b, which explicitly requires a court to order joint and several liability, with some exceptions not applicable here, when more than one person is legally obligated to support the child. SRS correctly notes that the mother's conduct has no bearing upon the parties' respective obligations to support their child. Other courts have so held. In *Weinberg v. Omar E.*, 106 App. Div. 2d 448, 448, 482 N.Y.S.2d 540 (1984), the court held:

"[T]he mother's alleged fault or wrongful conduct is irrelevant under section 545 of the Family Court Act [citation omitted]. The primary purpose of a paternity proceeding is to protect the welfare of the illegitimate child and, accordingly, the mother's conduct should have no bearing on the father's duty of support nor upon the manner in which the parents' respective obligations are determined [citation omitted]."

SRS also notes that Shane cites no authority in support of his contention. Nowhere does the law in this state suggest that the mother's "wrongdoing" can operate as a setoff or bar to a father's liability for child support. Under the facts as presented to this court, the district court properly held that Shane owes a duty of support to Melanie and properly ordered that Shane and Colleen were jointly and severally liable for the monies previously paid by SRS.

While the foregoing disposes of the issues on appeal, we would be remiss if we did not comment upon various other facets of

this appeal. This court was not supplied with any meaningful record in this case. The only record supplied by counsel was a portion of the pleadings in the district court. No transcript or other evidence of the proceedings before the hearing officer was included in the record, and the facts, while apparently not disputed, have been gleaned from the pleadings, briefs, arguments before this court, and a transcript of the arguments before the district judge which this court felt compelled to obtain. The appellants' brief does refer to two exhibits, allegedly attached to their brief, in support of some of their statements of fact. However, such exhibits were not made part of the record on appeal, nor were they attached as exhibits to the brief. Neither parties brief could be considered adequate, let alone a model, for appellate procedure.

Additionally, counsel for SRS joined the parents of Shane as parties defendant, although no relief was sought against those defendants. At oral argument, appellate counsel had no explanation for joining Shane's parents, but it appears trial counsel may have done so under some mistaken idea that it was necessary to obtain valid service on Shane.

Finally, we call attention to the fact that no issue was raised as to the propriety of the judgment against a youngster who was still a full-time student when these proceedings were commenced. When questioned in oral argument about the policy of SRS in seeking a judgment in excess of $7,000, counsel replied with the surprising statement that SRS had no intention of ever attempting to collect its judgment. Under such circumstances, the reason for seeking that portion of the judgment still eludes us.

The judgment of the district court is affirmed.