489 S.E.2d 917

**John DOE and Jane Doe, Respondents,**

**v.**

**Charles R. BROWN, Jr., and Baby Girl Ashlie, an infant under the age of seven (7) years, Defendants,**

**of whom Charles R. Brown, Jr., is Appellant,**

**and Baby Girl Ashlie, an infant under the age of seven (7) is, Respondent,**

**and Charles R. Brown, Sr., and Mrs. Charles R. Brown, Sr., Intervenors–Appellants.**

**No. 24680.**

Supreme Court of South Carolina.

Heard May 20, 1997.

Decided Sept. 2, 1997.

*Law*, § 6.1 (1994 Supp.) (concept of justiciability encompasses several doctrines, including ripeness, mootness, and standing).

O. W. Bannister, Jr., of Hill, Wyatt & Bannister, L.L.P., Greenville, for appellants.

Stephen A. Yacobi and D. Denby Davenport, Jr., both of Davenport & Yacobi, P.A., Greenville, for respondents.

James Fletcher Thompson, of Thompson & Sinclair, Spartanburg, Guardian ad Litem for Baby Girl Ashlie.

FINNEY, Chief Justice.

The critical issue in this case is whether the father of a child, conceived as the result of father's statutory rape of the mother, has any parental rights to that child? The family court first held the father had no rights, and therefore he need not consent to the child's adoption nor be given notice of the adoption proceedings. Alternatively, the court held that this Father had not complied with the statutory requirements so as to require his consent to the adoption. We agree with the family court's second holding, and affirm.

Baby Girl Ashlie was conceived as the result of appellant Charles R. Brown, Jr.'s. (Father's) statutory rape of twelve year old Mother in Kentucky.[1] After Ashlie was born in South Carolina, Mother relinquished her parental rights and consented to Ashlie's adoption by the respondents. Respondents then brought this adoption action, and the family court permitted Father and his parents, appellants Mr. and Mrs. Charles R. Brown, Sr. (Grandparents) to intervene. From orders "terminating" Father's rights and granting Ashlie's adoption, Father and Grandparents appeal. Appellants do not challenge the family court's ruling that Grandparents' rights, if any, are derivative of Father's, and that they have no independent standing to challenge the adoption.

---

1. Father was seventeen years old at the time of conception. It is undisputed that because of the parents' ages, intercourse was a criminal act in Kentucky. Kentucky Code of Laws § 510.120(1)(b). Had the act occurred in South Carolina, it would have been classified as second degree criminal sexual conduct. S.C.Code Ann. § 16–3–655(2) (1985).

 The resolution of the issues raised by this case turns on the interpretation of several statutes. South Carolina Code Ann. § 20–7–1690 (Supp.1996) lists the persons who must consent or relinquish their parental rights to a child for purposes of the child's adoption. Section 20–7–1695 (Supp. 1996) specifies those persons from whom neither consent nor relinquishment is required. Under this statute, parents who need not consent or relinquish their parental rights are those who have already had their rights terminated; those who are mentally incompetent; and those, such as the Mother here, who have executed a relinquishment pursuant to S.C.Code Ann. § 20–7–1700 (Supp.1996). There is no exemption in these consent/relinquishment statutes for the parent of a child conceived as the result of that person's criminal act.[2]

A different statute, § 20–7–1734 (Supp.1996), lists the persons and agencies who must be given notice of adoption proceedings. Generally, a person whose parental rights have been terminated or relinquished or who has consented to the adoption need not be given notice of the adoption proceedings. § 20–7–1734(A). Certain fathers, however, whose consent or relinquishment to adoption is not required under § 20–7–1690 are, never-the-less, entitled to notice of the adoption under subsection (B) of § 20–7–1734. This notice statute explicitly provides, however, in its next subsection, that a father otherwise entitled to notice under subsection (B) is not entitled to notice if the child was conceived as the result of criminal sexual conduct or incest. § 20–7–1734(C).

 In sum, South Carolina's statutory adoption plan defines which parents must consent or relinquish their parental rights, or have them terminated, in order for a child to be adoptable. There is no *per se* exclusion of parents of children conceived as the result of a criminal act from the statutory consent/relinquishment/termination requirement. A different statute defines those persons who are entitled to notice of an adoption, and this notice statute explicitly excludes "criminal parents."

---

**2.** A female can statutorily rape a male child under our gender-neutral "CSC with a minor" statute. S.C.Code Ann. § 16–3–655 (1985). *See State ex rel. Hermesmann v. Seyer,* 252 Kan. 646, 847 P.2d 1273 (1993).

The family court order extrapolated from § 20–7–1734(C)'s "no notice" provision that ".... a rapist has no [parental] rights to the child conceived as the result of the criminal act." The court therefore held Father simply had no right to be involved in this proceeding. Alternatively, if Father did have rights and was to be treated under the consent/relinquishment statutes as any other out-of-wedlock father, then the court held that Father's failure to assume parental responsibility within the meaning of § 20–7–1690(A)(5)(b) (Supp.1996) and/or *Abernathy v. Baby Boy,* 313 S.C. 27, 437 S.E.2d 25 (1993), abrogated the need for Father's formal consent. The judge held that he was effectively terminating Father's parental rights, and made a finding that the adoption was in the child's best interest.

■■■ Appellants first argue the family court erred in extrapolating from § 20–7–1734(C)'s "no notice" of adoption provision that the parents of children conceived as the result of their criminal act have no parental rights. For the following reasons we agree, and hold that under our statutory scheme, these parents must be treated as other out-of-wedlock parents[3] for purposes of the consent/relinquishment requirements.

■■■ Adoption statutes are in derogation of the common law and therefore must be strictly construed. *Hucks v. Dolan,* 288 S.C. 468, 343 S.E.2d 613 (1986). Here, there is no language exempting "criminal parents" from the consent/relinquishment requirement, while there is such an exemption in the notice statute. Statutes which are part of the same legislative scheme should be read together. *In re Keith Lamont G.,* 304 S.C. 456, 405 S.E.2d 404 (1991). The clear and unambiguous language of the these statutes indicates that when the Legislature intended to exclude "criminal parents" from the adoption process, it did so. *See Gaster v. Evatt,* 326 S.C. 33, 483 S.E.2d 197 (1997). Such parents are exempt only

---

3. It is possible for a child to be conceived as the result of criminal sexual conduct by one spouse towards the other. S.C.Code Ann. § 16–3–658 (Supp.1996). The adoption of a child conceived as the result of such an assault should be treated as the adoption of any child born to the marriage. Further, where the "criminal father" is unknown, a "John Doe" consent/relinquishment/adoption proceeding is appropriate. *See Evans v. S.C. Dep't of Soc. Services,* 303 S.C. 108, 399 S.E.2d 156 (1990) (unwed mother refused to provide name of father).

from the notice of adoption requirement under our statutes.[4] *Compare Mullis v. Kinder,* 568 N.E.2d 1087 (Ind.App.1991) (Father's consent not required where statute stated consent to adoption not needed from fathers of children conceived as a result of child molestation).

██ Further, public policy is served by recognizing a legal relationship, albeit limited,[5] between the "criminal parent" and the child. For example, if the mother wishes to retain custody of the child, then legal recognition of the relationship will allow her to seek child support from the father. *Cf., e.g., State ex rel. Hermesmann v. Seyer,* 252 Kan. 646, 847 P.2d 1273 (1993); *Com. ex rel. Rush v. Hatfield,* 929 S.W.2d 200 (Ky. App.1996); *In re Paternity of J.L.H.,* 149 Wis.2d 349, 441 N.W.2d 273 (App.1989) (cases requiring underage father victims of statutory rapes to contribute to child's support where intercourse was factually voluntary, even if under criminal law it was without consent).

██ In its alternative holding, the family court held that Father had not met the requirements of either § 20–7–1690(A)(5)(b) or *Abernathy* so as to require him to consent or relinquish his rights to Ashlie prior to her adoption. We affirm the family court.

██ Under the applicable code section, consent or relinquishment is required from an unwed father when the child was placed with the adoptive parents six months or less after her birth "only if the father paid a fair and reasonable sum, based on the father's financial ability, for the support of the child or for expenses incurred in connection with the mother's pregnancy or with the birth of the child, including but not limited to, medical, hospital, and nursing expenses." § 20–7–1690(5)(b). As this Court explained in *Abernathy,* an unwed father can establish the right to have his interest in the child afforded legal protection not only where he meets the literal language of the statute, "but also when he undertakes suffi-

---

**4.** The notice exception means the "criminal parent" will not know the identity or residence of the adoptive parents.

**5.** "Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) *cited with approval in Abernathy v. Baby Boy, supra.*

cient prompt and good faith efforts to assume parental responsibility and to comply with the statute."

In *Abernathy*, the Court noted it was faced with "unusual facts" in that the Mother stymied all of the father's efforts to offer assistance, both monetary and emotional, as well as his offer of matrimony. Abernathy made extensive efforts to be involved as soon as he learned of the pregnancy, and promptly responded when he learned of the contemplated adoption. He was a responsible, mature adult with a demonstrable ability to competently raise a child.

In sharp contrast to *Abernathy*, the family court judge in this case found Father "young, immature, and irresponsible." He found Father failed to meet the statutory requirements, and that his conduct upon learning of the pregnancy and during the next several months did not rise to the level necessary to meet the *Abernathy* standard. Although this Court is free to find the facts differently from the family court, we find the record overwhelmingly supports these findings. *Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994). Accordingly, the orders severing Father's parental rights and granting the adoption are

AFFIRMED.

TOAL, MOORE, WALLER and BURNETT, JJ., concur.