849 So.2d 963 (2002)
C.M.
v.
D.P.
2001050.
Court of Civil Appeals of Alabama.
March 1, 2002.
Certiorari Denied October 18, 2002.
*964 Connie Cooper, Phenix City, for appellant.
Submitted on appellant's brief only.
Alabama Supreme Court 1011159.
YATES, Presiding Judge.
C.M., the father, petitioned to have his parental rights terminated. The trial court denied his petition, and C.M. appeals.
T.L. ("the child") was born in October 1989. D.P. ("the mother") was 18 years old at the time of his birth. C.M. was 19 years old. The mother did not name C.M. as the father on the child's birth certificate. The mother and C.M. were never married. The mother married another man ("the husband") in June 1992, when the child was two years old. Although the husband is not the biological father of the child, he has acted like the child's father, and loves the child as his own. In fact, until the day that the child had to appear in court for a paternity test, the child believed the husband was his biological father.
In 1997, the mother contacted C.M. through her sister-in-law, who informed C.M. that the child was his son. She told him that the mother wanted him to voluntarily terminate his parental rights so that the husband could adopt the child. C.M. testified that he did not know that he had a child before the sister-in-law telephoned him.[1] C.M. subsequently talked to the mother, and indicated that if the child was, in fact, his, he would not voluntarily terminate his parental rights. Initially, the mother and C.M. agreed to divide the cost of paternity testing equally, but the mother retracted her offer upon learning the cost of the testing. Later, the mother and the husband decided not to pursue the husband's adoption of the child.
The mother petitioned for adjudication of paternity and for child support. Testing was performed, which proved that C.M. was the biological parent of the child. The court ordered child support and set a visitation schedule. C.M. made some child-support payments, and the child visited with C.M. and his wife approximately *965 five times after the paternity determination.
On November 9, 2000, C.M. petitioned to terminate his parental rights. On June 5, 2001, the trial court conducted a hearing on the petition and denied the petition in open court. On that same day, the trial court issued a final judgment, which formalized the denial of the petition, and set a visitation schedule for C.M. On June 25, 2001, C.M. moved for a new trial, which the court denied on June 29, 2001. C.M. appeals. The mother, as appellee, has not favored this court with a brief.
C.M. argues first that the trial court committed reversible error in denying his petition to terminate his parental rights, and second, that pursuant to § 26-17-6, Ala.Code 1975, the statute of limitations for determining paternity had run before the paternity test that determined that he was the child's father was conducted.
Where ore tenus testimony is received in a termination-of-parental-rights case, the trial court's judgment based on those findings will be presumed correct and will not be disturbed unless it is plainly and palpably wrong. J.L.B. v. State Dep't of Human Res., 608 So.2d 1367 (Ala. Civ.App.1992). This presumption of correctness is based on the fact that the trial court is in the unique position of being able to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986).
This case is unique in that C.M. is requesting that his parental rights be terminated, against the wishes of the mother. He argues that it would be in the best interests of the child for his rights to be terminated. He claims that it would be disruptive to the child if he were to assert himself as the child's father, thereby intruding on the family relationship established between the child and the husband. C.M. stated that he had consulted "professionals," who, he said, agreed with his assessment of the situation.
C.M. testified that his relationship with the child is not that of a father and son, but is, rather, that of friends or "buddies." He stated that the husband had behaved as the child's father and that he was the child's father in every sense of the word. C.M. stated that he did not believe that it would be possible for him to have a father-son relationship with the child.
A parent's parental rights cannot be terminated merely for the convenience of the parties. Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987), reversed on other grounds by Ex parte Beasley, 564 So.2d 950 (Ala.1990). In Brooks, the mother and father jointly petitioned the court to have the father's parental rights terminated. The father and mother were divorced, and the father, according to the mother, had "shown no interest in [the child], lack[ed] stability, [was] ill-tempered, and disapprove[d] of her raising [the child] as a Jew." Id. at 616. The father stated that he had no interest in visiting with his son and agreed that it would be in the best interests of the child for his rights to be terminated. Id.
In Brooks, the supreme court agreed with this court that the father's conduct toward his child could amount to abandonment under the Child Protection Act. The supreme court also noted that if the father's parental rights were terminated, he might attempt to avoid any support obligation. The court stated that "the 1984 Child Protection Act was not intended as a means for a parent to avoid his obligation to support his child." Id. at 616. The supreme court found that there was no clear and convincing evidence indicating that termination would be in the child's best interests, because all future rights to support, parental affiliation, and inheritance *966 would be severed, with the child receiving nothing in return. Id. at 617. In paternity proceedings, the child's best interests are paramount; they take precedence over the interests of other parties. S.F. v. State ex rel. T.M., 695 So.2d 1186, 1188-89 (Ala.Civ.App.1996) (holding that the child's best interests dictated that the father contribute to the support of his child, even though the child was conceived as a result of sexual assault by the mother).
Courts in many other states have held that "parents may not voluntarily terminate their parental rights simply to avoid their responsibility to support their children." In re Bruce R., 234 Conn. 194, 211, 662 A.2d 107, 116 (1995) (citations omitted (citing holdings in multiple states)). See also In re R.A.S., 826 S.W.2d 397, 401 (Mo.Ct.App.1992) ("[t]he termination of parental rights does not merely sever the rights of the parent to the child, but also severs the child's right to the parent"); In re D.W.K., 365 N.W.2d 32, 35 (Iowa 1985) (holding that the father could not voluntarily terminate his parental rights, even though he testified that he had no regard for the child and intended to show no interest in the child).
It could be maintained that C.M. abandoned the child, as did the father in Brooks. Certainly, as was the case in Brooks, C.M. wants to have his parental rights terminated. However, as in Brooks, it is not in the child's best interests to be alienated from any future right to financial support, parental affiliation, and inheritance. As the supreme court said, the Child Protection Act was not enacted to allow parents to terminate their rights and to avoid paying support for their child. Therefore, we find that there is substantial evidence to support the trial court's decision and that the trial court did not commit reversible error in refusing to terminate C.M.'s parental rights.
C.M. next argues that the statute of limitations had run on the determination of paternity, and that he should not have been adjudicated the father of the child. He did not raise this argument before the trial court. As C.M. admits in his brief, this court may not consider arguments raised for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992).
For the forgoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
NOTES
[1] The mother testified, however, that she had told C.M. that he was the father on the day she learned she was pregnant. She testified that C.M. visited her in the hospital three days after the child was born, and that he visited with her and the child at least once when the child was three months old.