736 S.E.2d 873

**William M. RHETT and Nancy R. Rhett, Appellants/Respondents,**

**v.**

**Jonathan H. GRAY, Respondent/Appellant.**

**No. 5066.**

Court of Appeals of South Carolina.

Heard April 26, 2012.

Decided Dec. 19, 2012.

Rehearing Denied Jan. 25, 2013.

---

480

484

Charles E. Carpenter, Jr., and Carmen V. Ganjehsani, both of Columbia; H. Fred Kuhn, Jr., of Beaufort, for Appellants/Respondents.

Harold A. Boney, Jr., of Beaufort; James B. Richardson, Jr., of Columbia, for Respondent/Appellant.

KONDUROS, J.

This is an appeal arising out of claims by William M. and Nancy R. Rhett (collectively the Rhetts) to two easements on Jonathan H. Gray's property. The Rhetts appeal the master-in-equity's finding that one of the easements was abandoned. They also appeal the master's not allowing them to use the other easement to access all of their property. They further appeal the master's denial of their request for attorney's fees. Gray appeals the master's finding the Rhetts could use the other easement to access part of their property to which it is not appurtenant. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

In March 1981, the Rhetts purchased one acre of land located in Beaufort County from the heirs of Tarquin Smalls. The deed contained no reference to any easement. This property was bounded on the west and south by twenty acres[1] William's mother owned and on the north and east by property owned by heirs of Tarquin. The Rhetts built their principal residence on the property and accessed the property through William's mother's property, via Conch Point Lane, a private driveway extending from Trotters Loop. In December 1981, the Rhetts bought a second acre from Tarquin's heirs, which surrounded their previously purchased acre. This conveyance also did not involve any easements.

---

1. At the time, this tract was believed to be eighteen acres but was later determined to be twenty acres.

In 1982, Veronica Washington Smalls, an heir of Tarquin, received a tract from the Tarquin Smalls property containing 5.97 acres, which was adjacent to the Rhetts' property. The property deeded to Veronica did not contain an express easement but the plat referred to in the deed contained a fifty-foot access easement along the property owned by another of Tarquin's heirs, which had a terminus on Veronica's property. Veronica divided her tract into two parts; she conveyed a 1.25–acre piece to Yancey O'Kelley and the remaining 4.12 acres[2] to the Rhetts, which was adjacent to their current property. The fifty-foot easement abutted the 1.25–acre tract but not the 4.12–acre tract. The Rhetts accessed their 4.12 acres the same way they accessed their other two acres. In 1984, the Rhetts purchased the 1.25–acre tract from O'Kelley. The deed conveyed "all of the right, title and interest in the easement for ingress and egress as shown on said plat."

Thelma Owens Smalls obtained one-acre tract of land from Nathan Smalls, an heir of Tarquin, in 1986. In 1987, Nathan conveyed an express easement that was thirty feet wide, extending from Trotters Loop across his land to Thelma's land. The Rhetts purchased the one-acre tract of land from Thelma. The deed conveyed "all of the rights in the existing fifty (50') foot and thirty (30') foot easement extending from the county road as shown on the above referenced plat." The Rhetts then sold 0.85 acres of that property to Gene Meador, retaining the 0.15–acre portion south of the slough[3] for themselves that included the easement.

In 1988, Nathan sold a 4.95–acre tract, which was encumbered by both easements, to R. Milledge Morris, IV. Morris sold an abandoned house on his property to the Rhetts, which they moved to the 4.12 acres they had purchased from Veronica. The Rhetts restored the house and refer to it as the cottage.[4] In 1992, Gray bought the 4.95–acre tract[5] and an

---

2. This adds up to 5.37, not 5.97, but no one disputes that the property was split into only these two pieces.

3. A slough is "[a]n arm of a river, separate from the main channel" or "[a] bog; a place filled with deep mud." *Black's Law Dictionary* 1515 (9th ed. 2009).

4. Currently, the Rhetts' adult son lives in the cottage.

5. The deed listed the property as 5.06 acres, determined from a survey.

additional 0.95 acre tract from Morris. The plat showed both easements encumbering Gray's property. William and Gray decided to purchase the 0.85–acre tract William had previously sold to Meador. William swapped his half interest in the property with Gray in exchange for the part of Gray's property southeast of the ditch and south of the slough. The Rhetts' surveyor, David S. Youmans, prepared a plat showing the swap. The plat shows the thirty-foot easement on the portion to be owned by Gray and states "EASEMENT TO BE ABANDONED" on the portion of the property the Rhetts acquired. William testified the portion of the easement on Gray's property was abandoned because Gray did not need the easement because his property was next to the road.

In 1994, Gray placed on his property a mobile home, where he and his family lived. In 1997, Gray moved into a home built on his property. Around 1997 or 1998, Gray put a wire pasture fence on part of his property in which to keep his farm animals. Also in 1997, Gray separated a portion of his property for his parents and they built a house there in 1998. Gray's mother continued to reside there after Gray's father passed away in 1999.

In 2000 Gray put a farm gate at Trotter's Loop, at the easement area, and secured it with a lock. In 2005, Gray replaced the farm gate with a wrought iron gate, which he also kept locked. In March 2007, Gray placed a load of fill dirt in the easement area as well as some hay bales. In May 2007, the Rhetts bought William's mother's eighteen-acre tract. The Rhetts considered developing the property at that time but later decided to sell it instead. In December 2007, the Rhetts' attorney sent Gray a letter requesting that he remove the gate and dirt piles.

On March 31, 2008, the Rhetts filed a complaint against Gray, alleging Gray had "unreasonabley interfered with [their] full and free use and enjoyment of [the thirty-foot and fifty-foot easements] by placement of obstructions upon the easement, including but not limited to a gate, and a mound of dirt." The Rhetts sought an injunction against Gray, "barring and prohibiting [Gray] from closing, obstructing, or interfering in whole or in part with [the Rhetts'] full and free use of the entire easement, and ordering and compelling [Gray] to forth-

with remove all obstructions and barriers placed by [Gray] with the confines of the easements." The Rhetts further sought damages, actual and punitive, as well as attorney's fees incurred by them in connection with the enforcement of their easement rights.

On June 10, 2008, Gray filed an answer denying the allegations of the Rhetts' complaint and asserting affirmative defenses. On June 19, 2008, the Rhetts filed a motion for a temporary injunction. On July 10, 2008, Gray filed an amended answer and counterclaim, denying the allegations of the complaint and seeking a declaratory judgment that the easements were abandoned in the 1992 land swap. Gray further contended that even if the easements were not abandoned, his gating of the easements was not an unreasonable interference with the Rhetts' rights. Gray also alleged the Rhetts' claims for damages were barred by the statute of limitations. Gray asserted estoppel and laches as defenses. Additionally, Gray contended the Rhetts intended to use the easements as a subdivision road for the development of their property, including acreage to which the easements were not appurtenant. Gray sought a declaratory judgment that the Rhetts' intended use of development would constitute an unintended, unreasonable, and unlawful burden on his property. Gray further sought an injunction prohibiting the Rhetts from using the easements for access to any of their land other than the pieces to which it was originally appurtenant and from constructing a subdivision road over Gray's property.

The case was referred to a master by consent order. Following the trial, the master issued an order finding (1) the thirty-foot easement was appurtenant to the one-acre Thelma parcel and was abandoned; (2) the fifty-foot easement was an implied easement appurtenant to the 1.25–acre O'Kelley parcel and was not abandoned; (3) the Rhetts may only use the fifty-foot easement to access the 5.97–acre parcel, which included the 1.25 acres that was appurtenant, and are enjoined from using it to access the remainder of their property; (4) Gray's gate at the entrance to the fifty-foot easement is necessary for Gray's preservation and use of his property and is located, maintained, and constructed to not interfere with the Rhetts' right to use the easement; (5) Gray may keep the gate locked as long as he provides the Rhetts a key or other means to open the gate when they desire; and (6) Gray shall remove

the dirt pile, the hay bales, and board fence enclosing his horse paddock. The master denied the Rhetts' claim for attorney's fees. Both Gray and the Rhetts moved the master to reconsider. The trial court denied both motions. This appeal followed.

## STANDARD OF REVIEW

"The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Hardy v. Aiken,* 369 S.C. 160, 165, 631 S.E.2d 539, 541 (2006) (citation and quotation marks omitted). "In a law case tried by the judge without a jury, this court reviews for errors of law and reviews factual findings only for evidence which reasonably supports the court's findings." *Eldridge v. City of Greenwood,* 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct.App. 1998).

"However, the determination of the scope of the easement is a question in equity." *Hardy,* 369 S.C. at 165, 631 S.E.2d at 541. On appeal in an action in equity, the appellate court may find facts in accordance with its views of the preponderance of the evidence. *Grosshuesch v. Cramer,* 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005). Thus, this court may reverse a factual finding by the trial court in such cases when the appellant satisfies us the finding is against the greater weight of the evidence. *Campbell v. Carr,* 361 S.C. 258, 263, 603 S.E.2d 625, 627 (Ct.App.2004). This broad scope of review does not require the appellate court to disregard the findings of the trial court, which saw and heard the witnesses and was in a better position to evaluate their credibility. *Ingram v. Kasey's Assocs.,* 340 S.C. 98, 105, 531 S.E.2d 287, 291 (2000). Furthermore, the appellant is not relieved of the burden of convincing this court the trial court committed error in its findings. *Pinckney v. Warren,* 344 S.C. 382, 387–88, 544 S.E.2d 620, 623 (2001).

## LAW/ANALYSIS

### I. The Rhetts' Appeal

#### A. Abandoned Easement

The Rhetts contend the master erred in finding the thirty-foot easement was abandoned because (1) when they

obtained ownership to the land through which the easement ran, their ownership rights became fee simple absolute; (2) the plat prepared by the their surveyor unambiguously shows they only intended to abandon the easement because it ceased to exist because of merger on the Rhetts' property but it was not abandoned as to Gray's property; and (3) the plat is ambiguous as to whether the surveyor's language meant only a portion or all of the easement was meant to be abandoned and parol evidence should have been admitted to determine the intent. We agree the master erred in finding the easement abandoned.

An easement is a right to use the land of another for a specific purpose. *Steele v. Williams*, 204 S.C. 124, 132, 28 S.E.2d 644, 647 (1944). This right of way may arise by grant,[6] from necessity, by prescription, or by implication by prior use. *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 416, 633 S.E.2d 136, 139 (2006); *Steele*, 204 S.C. at 132, 28 S.E.2d at 647–48. "A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments." *Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn*, 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct.App. 2001) (quotation marks omitted).

"[T]ermination of an easement by abandonment is a factual question in an action at law . . . ." *Eldridge v. City of Greenwood*, 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct.App. 1998).

[A]n easement may be lost by abandonment and in determining such question the intention of the owner to abandon is the primary inquiry. The intention to abandon need not appear by express declaration, but may be inferred from all of the facts and circumstances of the case. It may be inferred from the acts and conduct of the owner and the nature and situation of the property, where there appears some clear and unmistakable affirmative act or series of acts clearly indicating, either a present intent to relinquish the easement, or purpose inconsistent with its further existence.

---

**6.** "A reservation of an easement in a deed by which lands are conveyed is equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands." *Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 419, 143 S.E.2d 803, 806 (1965).

*Carolina Land Co. v. Bland,* 265 S.C. 98, 109, 217 S.E.2d 16, 21 (1975). The burden of proof is upon the party asserting abandonment to show the abandonment by clear and unequivocable evidence. *Id.* Mere nonuse of an easement created by deed will not amount to an abandonment. *Witt v. Poole,* 182 S.C. 110, 115, 188 S.E. 496, 498 (1936).

> In construing a deed, the intention of the grantor must be ascertained and effectuated, unless that intention contravenes some well settled rule of law or public policy. In determining the grantor's intent, the deed must be construed as a whole and effect given to every part if it can be done consistently with the law. The intention of the grantor must be found within the four corners of the deed.

*Windham v. Riddle,* 381 S.C. 192, 201, 672 S.E.2d 578, 582–83 (2009) (hereinafter *Windham II* ) (citations and quotation marks omitted), *aff'g Windham v. Riddle,* 370 S.C. 415, 418, 635 S.E.2d 558, 559 (Ct.App.2006) (hereinafter *Windham I* ).

When the Rhetts and Gray swapped property, they no longer owned the part of the easement on their own property but each would have been entitled to the easement across the other's new property barring them abandoning the easement. However, Gray had no reason for an easement on the Rhetts' new property because he no longer needed to cross the Rhetts' property. In contrast, the Rhetts still needed the easement on Gray's new property to access their property. Youmans, the Rhetts' surveyor, testified the Rhetts did not intend for the easement to remain on their new property but did intend to continue using the easement on Gray's new property. Further, Gray and his wife testified the Rhetts occasionally used both easements and when Gray placed a locked gate across the easement, had inquired about being able to use his key from time to time and in case of an emergency. As the party asserting the easement was abandoned, Gray had the burden to provide clear and unequivocal evidence the Rhetts abandoned the easement. The plat states the easement is abandoned only on the portion showing the Rhetts' new property, not the entire easement. Accordingly, we find the master erred in finding the thirty-foot easement was abandoned.

492

## B. Fifty–Foot Easement Appurtenant

 The Rhetts assert the master erred in finding the fifty-foot easement was only appurtenant to the 1.25–acre piece and not the 4.12–acre piece. We disagree.

 Determining whether an easement is in gross or appurtenant is a question in equity because it involves the extent of a grant of an easement. *Windham I*, 370 S.C. at 418, 635 S.E.2d at 559; *see also Heritage Fed. Sav. & Loan Ass'n v. Eagle Lake & Golf Condos.*, 318 S.C. 535, 539, 458 S.E.2d 561, 564 (Ct.App.1995) ("The interpretation of a deed is an equitable matter.").

 "The general rule is that the character of an express easement is determined by the nature of the right and the intention of the parties creating it." *Plott v. Justin Enters.*, 374 S.C. 504, 514, 649 S.E.2d 92, 96 (Ct.App.2007) (quotation marks omitted). "[E]asements in gross are not favored by the courts, and an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate." *Smith v. Comm'rs of Pub. Works of City of Charleston*, 312 S.C. 460, 467, 441 S.E.2d 331, 336 (Ct.App.1994) (citing 25 Am.Jur.2d *Easements & Licenses* § 13 (1966)).

> The character of an express easement is determined by the nature of the right and the intention of the parties creating it. An easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer. In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. It also passes with the dominant estate upon conveyance. Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross. Where language in a plat reflecting an easement is capable of more than one construction, that construction which least restricts the property will be adopted.

*Windham II*, 381 S.C. at 201–02, 672 S.E.2d at 583 (citations and quotation marks omitted).

In *Windham II,* the court noted that because the party claiming an appurtenant easement had other irrigation options, whether an appurtenant easement was essentially necessary to the enjoyment of the property was questionable. *Id.* at 204, 672 S.E.2d at 584 (citing *Kershaw v. Burns,* 91 S.C. 129, 133, 74 S.E. 378, 379 (1912) ("The principle is well settled that a right of way appurtenant cannot be granted, unless it is essentially necessary to the enjoyment of the land to which it appertains."); *Ballington v. Paxton,* 327 S.C. 372, 380, 488 S.E.2d 882, 887 (Ct.App.1997) ("An appendant or appurtenant easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof.")).

The master correctly found the easement was only appurtenant to the 1.25 acres and not to the 4.12 acres. Although Veronica's property contained an easement for her entire 5.97 acres, when she granted 4.12 acres of it to the Rhetts, that grant did not contain an easement. However, the 1.25 acres she granted to O'Kelley did contain an easement. Once the Rhetts acquired the 1.25 acres, this did not resurrect the easement for the entire tract. Therefore, we affirm the master's decision that the fifty-foot easement was only appurtenant to the 1.25–acre tract.

## C. Access to All Twenty–Eight Acres from Easements

The Rhetts argue the master erred in issuing an injunction that they can only use the easements to access the 5.97 acres of their property and not the entire twenty-eight acres when their use of them to enter the remainder of their property will not increase the burden on Gray's estate. We disagree.

" '[T]he owner of the easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden.' " *Clemson Univ. v. First Provident Corp.,* 260 S.C. 640, 650, 197 S.E.2d 914, 919 (1973) (quoting 25 Am. Jur. 2d *Easements and Licenses* § 72 at 478). Although to the extent of the easement, the rights of the easement owner are paramount to those of the landowner, the easement owner's rights are not absolute but are limited, so the owners of the easement and the servient tenement may

have reasonable enjoyment. *Id.* (citation omitted). The owner of an easement has all rights incident or necessary to its proper enjoyment, but nothing more. *Id.*

■ "As a general rule, an easement appurtenant to one parcel of land may not be extended by the owner of the dominant estate to other parcels owned by him, whether adjoining or distinct tracts, to which the easement is not appurtenant." *Brown v. Voss,* 105 Wash.2d 366, 715 P.2d 514, 517 (1986) (citing *Heritage Standard Bank & Trust Co. v. Trs. of Schs.,* 84 Ill.App.3d 653, 40 Ill.Dec. 104, 405 N.E.2d 1196 (1980); *Kanefsky v. Dratch Constr. Co.,* 376 Pa. 188, 101 A.2d 923 (1954); *S.S. Kresge Co. of Mich. v. Winkelman Realty Co.,* 260 Wis. 372, 50 N.W.2d 920 (1952); 28 C.J.S. *Easements* § 92, at 772–73 (1941)).

■ "If an easement is appurtenant to a particular parcel of land, any extension thereof to other parcels is a misuse of the easement." *Id.* (citing *Wetmore v. Ladies of Loretto, Wheaton,* 73 Ill.App.2d 454, 220 N.E.2d 491 (1966); *Robertson v. Robertson,* 214 Va. 76, 197 S.E.2d 183 (1973); *Penn Bowling Rec. Ctr., Inc. v. Hot Shoppes, Inc.,* 179 F.2d 64 (D.C.Cir. 1949)). "As noted by one court in a factually similar case, '[I]n this context this classic rule of property law is directed to the rights of the respective parties rather than the actual burden on the servitude.' " *Id.* (quoting *Nat'l Lead Co. v. Kanawha Block Co.,* 288 F.Supp. 357, 364 (S.D.W.Va.1968), aff'd, 409 F.2d 1309 (4th Cir.1969)). The Washington Supreme Court noted:

> Under the express language of the 1952 grant, plaintiffs only have rights in the use of the easement for the benefit of parcel B. Although, as plaintiffs contend, their planned use of the easement to gain access to a single family residence located partially on parcel B and partially on parcel C is perhaps no more than technical misuse of the easement, we conclude that it is misuse nonetheless.

*Id.* The court qualified that statement, determining:

> [I]t does not follow from this conclusion alone that defendants are entitled to injunctive relief. . . . Some fundamental principles applicable to a request for an injunction must be considered. (1) The proceeding is equitable and addressed to the sound discretion of the trial court. (2) The trial court

is vested with a broad discretionary power to shape and fashion injunctive relief to fit the *particular facts, circumstances, and equities of the case before it.* Appellate courts give great weight to the trial court's exercise of that discretion. (3) One of the essential criteria for injunctive relief is actual and substantial injury sustained by the person seeking the injunction.

*Id.* at 517.

The trial court found as facts, upon substantial evidence, that plaintiffs have acted reasonably in the development of their property, that there is and was no damage to the defendants from plaintiffs' use of the easement, that there was no increase in the volume of travel on the easement, that there was no increase in the burden on the servient estate, that defendants sat by for more than a year while plaintiffs expended more than $11,000 on their project, and that defendants' counterclaim was an effort to gain "leverage" against plaintiffs' claim. In addition, the court found from the evidence that plaintiffs would suffer considerable hardship if the injunction were granted whereas no appreciable hardship or damages would flow to defendants from its denial. Finally, the court limited plaintiffs' use of the combined parcels solely to the same purpose for which the original parcel was used—*i.e.*, for a single family residence. Neither this court nor the Court of Appeals may substitute its effort to make findings of fact for those supported findings of the trial court. Therefore, the only valid issue is whether, under these established facts, as a matter of law, the trial court abused its discretion in denying defendants' request for injunctive relief. Based upon the equities of the case, as found by the trial court, we are persuaded that the trial court acted within its discretion.

*Id.* at 518 (citations omitted).

Enlarging an easement to include adjoining tracts increases the burden. *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn.Ct.App.1991).

A fundamental principle is that an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts, to which the right is not attached. In other words,

an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication.

*Adams v. Winnett*, 25 Tenn.App. 276, 156 S.W.2d 353, 357 (1941) (quotation marks omitted).

■■■■■■ The reason for the rule preventing an easement for the benefit of a particular piece of land from being extended to other tracts of land "is to prevent an increase of the burden upon the servient estate." *Id.; see also Ogle v. Trotter*, 495 S.W.2d 558, 565–66 (Tenn.Ct.App.1973). However, when the reason does not exist, the rule does not apply. *Ogle*, 495 S.W.2d at 566. Thus, when the burden on the easement has materially decreased or not increased, the easement holder may use the easement to access an adjoining property. *Id.* When "the additional burden is relatively trifling, the user will not be enjoined; and that, where the owner of a right of way appurtenant to a certain tract uses it for the period of prescription as appurtenant also to another tract, he gains a prescriptive right to such enlarged use." *Id.* (quotation marks omitted); *see also Carbone v. Vigliotti*, 222 Conn. 216, 610 A.2d 565, 569 (1992) ("[W]hen no significant change has occurred in the use of the easement from that contemplated when it was created, ... the mere addition of other land to the dominant estate does not constitute an overburden or misuse of the easement.").

Most of the case law provided by the Rhetts starts with the same principles that South Carolina jurisprudence expresses: an owner of an easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden. However, other states have determined that expanding the use of an easement to property that is not appurtenant is not worthy of an injunction in situations in which the expanded use does not increase the burden. South Carolina has not expressed such a principle, but in those cases the decisions were trusted to the trial court's judgment to weigh the particular facts. Here, the master allowed the

Rhetts to use the easement for one tract it found was not appurtenant, the 4.12–acre tract, (discussed below in Gray's appeal) and did not allow them to use it for the rest of their twenty-eight acres. The 5.97 acres contained one house, the cottage where their son lives, while the house where they live is located on the remainder of their twenty-eight acres. Thus, it would have increased the usage by one household containing two people. Accordingly, the master did not err in failing to allow the Rhetts to access their property other than the 5.97 acres with the easement.

## D. Attorney's Fees

The Rhetts contend the master erred in finding they were not entitled to attorney's fees although Gray placed them in the position of having to bring the lawsuit. We disagree.

Generally, attorney's fees are not recoverable unless authorized by contract or statute. *Baron Data Sys., Inc. v. Loter,* 297 S.C. 382, 383, 377 S.E.2d 296, 297 (1989). In *Town of Winnsboro v. Wiedeman–Singleton, Inc.,* 307 S.C. 128, 131, 414 S.E.2d 118, 120 (1992), the court allowed a party to recover attorney's fees and costs expended in defending the negligence of another party when the other party negligently performed its contract with the first party and because of that negligence and breach of contract directed toward the first party, the first party was forced to defend an action brought by a third party.

In *Addy v. Bolton,* 257 S.C. 28, 33, 183 S.E.2d 708, 709 (1971), the court found

the l[e]ssors seek to recover from the contractor the attorneys' fees incurred by them in defending themselves against the claim asserted by the tenants. The weight of authority sustains their right of recovery, either on the theory of an implied contract to indemnify, or because they were put to the necessity of defending themselves against the lessees' claim by the tortious conduct of the contractor, or by his breach of contract.

The court noted:

"It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it

necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages. In order to recover attorneys' fees under this principle, the plaintiff must show: (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant or because of defendant's tortious conduct; (2) that the dispute was with a third party-not with the defendant; and (3) that the plaintiff incurred attorneys' fees connected with that dispute. If the attorneys' fees were incurred as a result of a breach of contract between plaintiff and defendant, the defendant will be deemed to have contemplated that his breach might cause plaintiff to seek legal services in his dispute with the third party."

"In actions of indemnity, brought where the duty to indemnify is either implied by law or arises under a contract, reasonable attorney fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses."

*Id.* at 33, 183 S.E.2d at 709–10 (quoting 22 Am. Jur. 2d *Damages* § 166 at 235–36).

"[I]n actions of indemnity, brought where the duty to indemnify is either implied by law or arises under contract, and no personal fault of the indemnitee has joined in causing the injury, reasonable attorneys' fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses." *Id.* at 34, 183 S.E.2d at 710.

 "In order to sustain a claim for equitable indemnity, the existence of some special relationship between the parties must be established." *Toomer v. Norfolk S. Ry. Co.,* 344 S.C. 486, 492, 544 S.E.2d 634, 637 (Ct.App.2001). "[A] sufficient relationship exists [for indemnification] when the at-fault party's negligence or breach of contract is directed at the non-faulting party and the non-faulting party incurs attorney fees and costs in defending itself against the other's conduct." *Winnsboro,* 307 S.C. at 132, 414 S.E.2d at 121.

The cases the Rhetts cite are distinguishable from the present situation because they are all cases of implied indemnity. The current case is not such a case. Accordingly, the

master did not err in denying the Rhetts' request for attorney's fees.

## II. Gray's Appeal

Gray asserts the master erred in finding the fifty-foot easement could be used to access the 4.12–acre tract to which it is not appurtenant. We disagree.

As discussed above regarding the master's not allowing the Rhetts to access the remainder of their twenty-eight acres, South Carolina has not directly addressed this issue. In the strictest sense, a landowner's use of an otherwise valid easement not technically appurtenant to the land he or she attempts to use it for constitutes misuse. However, other states have affirmed the trial court's findings it was not a misuse when the burden is not substantially increased. Here, although the easement is only appurtenant to the 1.25–acre tract, it was originally granted to the entire 5.97 acre-tract. Also, it does not seem to impose that much greater of a burden on Gray. Accordingly, we affirm the master's decision to allow the Rhetts to access the additional 4.12 acres.

## CONCLUSION

We reverse the master's finding that the thirty-foot easement was abandoned. Additionally, we affirm the master's determination that only the 1.25–acre tract was appurtenant to the fifty-foot easement. Moreover, we affirm the master's decision to allow the Rhetts to use the fifty-foot easement to access 5.97 acres of their property but not the remainder of the twenty-eight acres. Further, we affirm the master's determination that the Rhetts were not entitled to attorney's fees. Accordingly, the master's decision is

**AFFIRMED IN PART AND REVERSED IN PART.**

GEATHERS, J., concurs.

PIEPER, J., concurring in part and dissenting in part.

I respectfully dissent with the majority's decision to hold the master erred in finding that one of the easements was abandoned. Based upon our standard of review, I would affirm the master's determination of abandonment of the

easement, as I would find evidence does exist in the record to support that determination. *See Judy v. Kennedy,* 398 S.C. 471, 478, 728 S.E.2d 484, 487 (Ct.App.2012) (providing the "termination of an easement by abandonment is a factual question in an action at law"); *Eldridge v. Eldridge,* 398 S.C. 113, 118, 728 S.E.2d 24, 26 (2012) ("In an action at law tried by a master, an appellate court will affirm the master's factual findings if there is any evidence in the record which reasonably supports them."). I concur with the majority's decision to affirm the remaining issues on appeal.