# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Columbia/CSA-HS Greater Columbia Healthcare
System, LP d/b/a Providence Hospital, Petitioner,

v.

The South Carolina Medical Malpractice Liability Joint
Underwriting Association and Michael P. Taillon,
Respondents.

Appellate Case No. 2011-197986

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
Alison Renee Lee, Circuit Court Judge

---

Opinion No. 27484
Heard April 1, 2014 – Filed January 21, 2015

---

## AFFIRMED

---

C. Mitchell Brown and Michael J. Anzelmo, both of
Nelson Mullins Riley & Scarborough LLP, of Columbia,
and Monteith P. Todd, of Sowell Gray Stepp & Laffitte
LLC, of Columbia, for Petitioner.

James Edward Bradley, of Moore, Taylor & Thomas,
P.A., of Columbia, and Andrew F. Lindemann, of
Davidson & Lindemann, P.A., of Columbia, for
Respondents.

**JUSTICE KITTREDGE:**  At issue in this case is whether the medical malpractice statute of repose[1] applies to the indemnity claim of Petitioner Columbia/CSA-HS Greater Columbia Healthcare System, LP (Providence Hospital).  The trial court and the court of appeals held that it does and thus bars the indemnity action brought by Providence Hospital.  Because we conclude that Providence Hospital's indemnity action is barred by the statute of repose, we affirm.

## I.

On May 31, 1997, Dr. Michael Hayes and Dr. Michael Taillon were working as emergency room physicians at Providence Hospital, presumably as independent contractors.[2]  Arthur Sharpe came to the Providence Hospital emergency room on the same date, complaining of chest pain.  Dr. Hayes and Dr. Taillon evaluated Sharpe and diagnosed him as suffering from reflux.  Sharpe was discharged.  Sharpe had actually suffered a heart attack, which was determined a few days later when he sought further medical care elsewhere.

Because of the misdiagnosis, on May 25, 1999, Sharpe and his wife filed a medical malpractice and loss of consortium action against Providence Hospital and Dr. Hayes.  The Sharpes did not name Dr. Taillon as a defendant.  Providence Hospital settled with the Sharpes on June 10, 2004.

On June 7, 2007, Providence Hospital filed this equitable indemnification action against Dr. Taillon and his medical malpractice insurer, The South Carolina Medical Malpractice Liability Joint Underwriting Association (collectively Respondents).  Respondents moved for summary judgment on the ground that the medical malpractice statute of repose bars Providence Hospital's claim and the circuit court granted the motion on that basis.  Providence Hospital appealed, and the court of appeals affirmed.  *Columbia/CSA-HS Greater Columbia Healthcare Sys. v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 394 S.C. 68, 75, 713

---

[1] S.C. Code Ann. § 15-3-545 (2005).

[2] *Cf. Simmons v. Tuomey Reg'l Med. Ctr.*, 341 S.C. 32, 53, 533 S.E.2d 312, 323 (2000) (affirming as modified the court of appeals imposing "a nondelegable duty on hospitals with regard to the physicians who practice in their emergency rooms" and adopting the Restatement (Second) of Torts § 429).

S.E.2d 639, 642 (Ct. App. 2011). We granted certiorari to review the court of appeals' decision.

## II.

An appellate court reviews the grant of summary judgment using the same standard employed by the circuit court. *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Tupper v. Dorchester Cnty.*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). "'Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below.'" *Grier v. Amisub of S.C., Inc.*, 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012) (quoting *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)).

## III.

The General Assembly has enacted a six-year statute of repose for medical malpractice actions. S.C. Code Ann. § 15-3-545. "A statute of repose creates a substantive right in those protected to be free from liability after a legislatively determined period of time." *Capco of Summerville, Inc. v. J.H. Gayle Constr. Co.*, 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) (citing *Langley v. Pierce*, 313 S.C. 401, 403–04, 438 S.E.2d 242, 243 (1993)). "A statute of repose is typically an *absolute time limit* beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body." *Id.* (emphasis added) (citing *Langley*, 313 S.C. at 404, 438 S.E.2d at 243). Thus, "'[s]tatutes of repose by their nature impose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists.'" *Id.* (quoting *Camacho v. Todd & Leiser Homes*, 706 N.W.2d 49, 54 n.6 (Minn. 2005)).

The question before us is whether Providence Hospital's claim for equitable indemnification is subject to the six-year statute of repose in section 15-3-545. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (quoting *Charleston Cnty. Sch. Dist. v. State Budget and Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993)).

Section 15-3-545(A) provides:

> In any action . . . to recover damages for injury to the person arising
> out of any medical, surgical, or dental treatment, omission, or
> operation by any licensed health care provider . . . acting within the
> scope of his profession must be commenced within three years from
> the date of the treatment, omission, or operation giving rise to the
> cause of action or three years from date of discovery or when it
> reasonably ought to have been discovered, not to exceed six years
> from date of occurrence, or as tolled by this section.

The statute of repose applies to an action "to recover damages for injury to the
person arising out of any medical, surgical, or dental treatment, omission, or
operation."  Under any construction of the statute, the language must include the
claim against Dr. Taillon to establish medical malpractice, which has never been
determined.   As the court of appeals noted:

> In order to prove it is entitled to equitable indemnification, Providence
> Hospital must show (1) [Dr.] Taillon was liable for causing Sharpe's
> damages, (2) it was exonerated from any liability for those damages,
> and (3) it suffered damages as a result of Sharpe's medical malpractice
> action which was eventually proven to be the fault of [Dr.] Taillon.

*Columbia*, 394 S.C. at 72, 713 S.E.2d at 641 (citation omitted).  As the court of
appeals correctly concluded, "[b]ecause Providence Hospital must establish [Dr.]
Taillon's liability for Sharpe's damages in order to show it is entitled to equitable
indemnification, we find Providence Hospital's action is an action to recover
damages for injury to the person."  *Id.* at 73, 713 S.E.2d at 641.  Thus, Providence
Hospital may not prevail on its equitable indemnification claim *unless* it proves
that Dr. Taillon is liable to Sharpe for damages for injury to the person, which falls
squarely within the language of the statute of repose.[3]  Under these circumstances,
we believe the legislature intended section 15-3-545(A) to bar Providence
Hospital's indemnity action.

The dissent attempts to minimize this essential element of Providence Hospital's
claim, referring to it as "but one element" and that "proof of the underlying
tortfeasor's liability is only one element that the hospital must prove."  But it is an

---

[3] We agree with the court of appeals that, in this context, there is no distinction
between seeking settlement costs or damages for injury to the person, for both
require proving Dr. Taillon's liability for Sharpe's damages.

element that is unquestionably part of section 15-3-545(A) and therefore is controlled by the statute of repose.

While the dissent would construe Providence Hospital's claim for indemnification as beyond the reach of section 15-3-545, we observe that the General Assembly has limited the reach of the statute of repose by setting forth exceptions. Section 15-3-545(B) excludes from the operation of the statute of repose actions where a foreign object, such as a surgical instrument, is left in the "body or person of any one" and permits these actions to "be commenced within two years from date of discovery or when it reasonably ought to have been discovered." Section 15-3-545(C) excludes actions that arose "prior to June 10, 1977[,]" and section 15-3-545(D) contains a tolling provision for persons under the age of majority. If the General Assembly desires to expand those exceptions to include the situation presented here, that decision lies exclusively in the Legislative Branch.

Finally, Providence Hospital argues that its view of legislative intent concerning the medical malpractice statute of repose is supported by reference to the construction statute of repose,[4] which expressly includes a reference to indemnity actions. We disagree, for we view the language and structure of the medical malpractice and construction statutes of repose differently. The medical malpractice statute of repose expressly *excludes* several categories of claims from its reach, as noted above. S.C. Code Ann. § 15-3-545(B)–(D). Indemnity actions are not excluded. *Id.* In contrast, the construction statute of repose expressly defines what types of actions are *included*, listing nine discrete categories of actions. *Id*. § 15-3-640(1)–(9) (2013). Included among these are "action[s] for contribution or indemnification for damages sustained on account of an action described in this section." *Id*. § 15-3-640(6).

We agree with Providence Hospital that the language of the construction statute of repose demonstrates that the General Assembly *can* expressly include indemnity claims in a statute of repose, yet the General Assembly is free to structure a statute of repose as it sees fit. The medical malpractice statute of repose and the construction statute of repose are drafted in entirely different ways. The former includes broad and expansive language and then lists what claims *are not* included in the statute of repose, while the latter lists the types of claims that *are* included in the statute of repose. Because the General Assembly structured the medical malpractice statute of repose and the construction statute of repose in different

---

[4] S.C. Code Ann. § 15-3-640 (2013).

ways, we do not believe Providence Hospital's syncretistic approach to statutory construction is an effective approach to discerning legislative intent.

In this case, Sharpe walked into Providence Hospital's emergency room over seventeen years ago. There was no allegation of medical malpractice against Dr. Taillon, much less any adjudication, within the statute of repose. Permitting Providence Hospital's indemnity claim to proceed at this juncture would "allow Providence Hospital to subject [Dr.] Taillon to liability for medical malpractice after the legislatively proscribed six-year statute of repose expired." *Columbia*, 394 S.C. at 75, 713 S.E.2d at 642. Such a result would be fundamentally at odds with the language and manifest purpose of the statute of repose.

## IV.

We find that the medical malpractice statute of repose bars Providence Hospital's indemnity claim. We affirm.

**AFFIRMED.**

**PLEICONES and BEATTY, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which HEARN, J., concurs.**

**CHIEF JUSTICE TOAL**:  I respectfully dissent because I read section 15-3-545(A) more narrowly than the majority.  In my view, the plain language of section 15-3-545(A) applies to all lawsuits arising from the underlying tortious conduct of the medical professional.  However, indemnification actions such as this one are legally distinct from the underlying tort.  Accordingly, it is my opinion that the statute does not apply to indemnification actions.

## I.    Underlying Facts and the Majority's Holding

This appeal is predicated upon two related cases.  The first case involves the Sharpes' medical malpractice and loss of consortium claims against Dr. Hayes and Providence Hospital for a misdiagnosis made by Drs. Hayes and Taillon seventeen years ago.  Providence Hospital settled the first case with the Sharpes ten years ago.

The second case, which is the subject of this appeal, is an equitable indemnification action brought by Providence Hospital against Dr. Taillon and his medical malpractice insurer, who were not named as defendants in the first case.  The hospital filed its suit seven years ago.[5]

South Carolina's medical malpractice statute of repose provides, in relevant part:

> [A]ny action . . . to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider . . . acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from the date of occurrence, or as tolled by this section [because the person is under the age of majority].

S.C. Code Ann. § 15-3-545(A), (D).

---

[5] In other words, Providence Hospital filed its suit three years after its indemnity claim accrued, upon the payment of its settlement with the Sharpes.  *Cf. First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 444, 445 S.E.2d 446, 449 (1994) ("As to indemnity, the statute of limitations generally runs from the time judgment is entered against the defendant.").

The majority affirms the lower courts' rulings that Providence Hospital's indemnity claim is time-barred.  In doing so, the majority tacitly admits that the medical malpractice statute of repose does not define what constitutes an action "to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation."  Then, without providing a statutory basis for its conclusion, the majority broadly interprets section 15-3-545 to encompass both claims for injury to the person *and* equitable indemnification.  In doing so, it places great importance on the fact that Providence Hospital "may not prevail on its equitable indemnification claim *unless* it proves that Dr. Taillon is liable to Sharpe for damages for injury to the person."

I believe the majority errs in its interpretation of section 15-3-545 because it fails to recognize that proof of the underlying tortfeasor's liability is but one element in an equitable indemnification claim.  Accordingly, I would not read the medical malpractice statute of repose to encompass indemnification claims.

## II.    Analysis

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."  *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).  "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning."  *Id.*

I am persuaded that the General Assembly did not intend section 15-3-545(A) to apply to indemnification actions based on:  (1) the plain language of the statute; (2) the nature of an indemnification action; and (3) the broader statutory scheme encompassing section 15-3-545.

### A. *Nature of Indemnification Actions*

A claim for equitable indemnification allows an innocent party to recover "the amount the innocent party must pay to a third party because of the at-fault party's breach of contract or negligence as well as attorney fees and costs which proximately result from the at-fault party's breach of contract or negligence." *Town of Winnsboro v. Wiedeman-Singleton, Inc.*, 307 S.C. 128, 130–31, 414 S.E.2d 118, 120 (1992).  Thus, damages in an equitable indemnification suit include: (1) the damages caused due to the underlying tort; and (2) the innocent

party's attorneys' fees incurred in defending itself in the underlying tort suit. *See, e.g.*, *Rhett v. Gray*, 401 S.C. 478, 497–98, 736 S.E.2d 873, 883–84 (Ct. App. 2012) (quoting *Addy v. Bolton*, 257 S.C. 28, 33, 183 S.E.2d 708, 709–10 (1971)).[6]

Moreover, unlike the underlying tort claim, an equitable indemnification claim does not arise at the time the underlying tort plaintiff suffered the tortious damage. Rather, an indemnity claim "accrues at the time the indemnity claimant suffers loss or damage, that is, at the time of payment of the underlying claim, payment of a judgment thereon, or payment of a settlement thereof by the party seeking indemnity." Maurice T. Brunner, Annotation, *When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867 (1974); *accord First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 444, 445 S.E.2d 446, 449 (1994).

Therefore, an indemnification action is separate and distinct from the underlying tort action, as the damages suffered by the parties involved in each suit are distinct, and the two causes of action accrue at different times. *See, e.g.*, *Canal Ins. Co. v. Leb. Ins. Agency, Inc.*, 504 F. Supp. 2d 113, 117 (W.D. Va. 2007) ("An indemnity claim does not seek recovery for any direct harm caused by the defendant to the plaintiff—it is clearly distinct from a direct cause of action."); *McDermott v. City of New York*, 406 N.E.2d 460, 462–63 (N.Y. 1980) ("[T]he indemnity claim is a separate substantive cause of action, independent of the underlying wrong . . . ."); *Cent. Wash. Refrigeration, Inc. v. Barbee*, 946 P.2d 760, 764 (Wash. 1997) ("Indemnity actions are distinct, separate causes of action from the underlying wrong and are governed by separate statutes of limitations."); Brunner, *supra* ("The cause of action for indemnity of one whose liability for a tort is secondary or constructive, against one whose liability for the tort is primary, is separate and distinct from the injured person's cause of action for the tort, and is generally recognized not to be a mere species of subrogation to the tort cause of action.").[7]

---

[6] In contrast, in the underlying tort suit, the injured party may only recover damages caused by the tort itself, and may not recover attorneys' fees.

[7] I note that the majority cites no authority beyond the court of appeals' opinion in this case for its conclusion that "Providence Hospital's [equitable indemnification] action is an action to recover damages for injury to the person." (Citation omitted) (quotation marks omitted). While I agree that the indemnification action is closely entwined with the merits of the underlying tort action, there is no authority in the law of this State for the conclusion that the two causes of action are wholly

The majority essentially equates Providence Hospital's indemnity action with the underlying tort action. However, proof of the underlying tortfeasor's liability is only one element that the hospital must prove to prevail on its equitable indemnification claim. That element is not, *by itself*, "an action . . . to recover damages for injury to the person," but instead is a component of an action to reimburse an innocent party who has paid damages on behalf of the underlying tortfeasor. Therefore, I disagree with the majority that the medical malpractice statute of repose applies so broadly as to encompass any action even tangentially related to "an action . . . to recover damages for injury to the person."

Further, under the majority's reading of section 15-3-545, an innocent party named in the underlying tort suit would rarely be able to bring an equitable indemnification claim. For example, if "a lawsuit is filed on the eve of the running of the statute of repose, but is not resolved until after the statute has run, the [indemnification] action will be barred *before the right has even accrued*." *Capco of Summerville, Inc. v. J.H. Gayle Constr. Co.*, 368 S.C. 137, 144, 628 S.E.2d 38, 42 (2006) (emphasis added). I believe this is an unduly harsh consequence of the majority's interpretation of section 15-3-545, and one that was not intended by the General Assembly.

The majority's holding represents a fundamental misunderstanding of the nature of indemnification actions which I fear will have far-reaching effects on the ability to seek indemnification. Specifically, it imposes several new "requirements" to bring timely indemnification actions.

For example, the majority states that the underlying action must establish the fault of the underlying tortfeasor, whether or not he is a named party in that action. Indeed, the majority goes so far as to require, prior to the running of the statute of repose, either an allegation of medical malpractice against the underlying tortfeasor, *or possibly even an adjudication by the innocent party against the tortfeasor*.

I find this new "requirement" to bring timely indemnification actions patently at odds with the doctrines of standing and ripeness. As explained, *supra*, the innocent party's right to sue for indemnification does not accrue until it actually sustains damages through either paying an injured party on behalf of the tortfeasor, or incurring attorneys' fees from defending itself in the underlying tort suit. Therefore, there is no justiciable case or controversy until the conclusion of the underlying tort action, regardless of its outcome. *See, e.g.*, *Waters v. S.C. Land*

interdependent.

*Res. Conservation Comm'n*, 321 S.C. 219, 227–28, 467 S.E.2d 913, 917–18 (1996) ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute . . . .  It is not enough that a threat of *possible* injury currently exists; the mere threat of a potential injury is too contingent or remote to support present adjudication." (citations omitted) (internal quotation marks omitted)).

The plain language of section 15-3-545(A) explicitly applies to "damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider . . . acting within the scope of his profession."  In contrast, an indemnification claim seeks to recover for the loss of a judgment or settlement an innocent third party is obligated to pay, rather than for medical injury.

Here, Providence Hospital's damages arose due to its vicarious liability for a third-party tortfeasor's misdiagnosis.  Thus, Providence Hospital's equitable indemnification suit does not directly seek to recover for any harm caused by the tort defendant to the underlying tort plaintiff.  Accordingly, it is my view that section 15-3-545 does not bar Providence Hospital's equitable indemnification claim.[8]

---

[8] Medical malpractice statutes of repose vary from state to state.  However, I find persuasive the reasoning of the Missouri Supreme Court in considering a statute similar to section 15-3-545.  The Missouri Supreme Court found that Missouri's medical malpractice statute of repose "encompasses those actions where the consumer of health services seeks damages for injuries resulting from some improper, wrongful or careless acts or omissions on the part of the healthcare provider in the delivery of health care to the consumer." *Rowland v. Skaggs Cos.*, 666 S.W.2d 770, 772–73 (Mo. 1984).  Therefore, the court concluded that there is no reason to subject a contribution action to the medical malpractice statute of repose because "an action for contribution is neither grounded in tort nor reasonably related to the types of actions enumerated" in the statute of repose; rather, a contribution action "accrues from the existence of a joint obligation on a liability shared by tortfeasors." *Id.* at 773.  I would adopt this reasoning with respect to our own medical malpractice statute of repose.

## B. Statutory Scheme

Additionally, I believe other provisions from the surrounding statutory scheme evidence the General Assembly's intent to exclude indemnification actions from the reach of section 15-3-545.

"[S]tatutes are to be construed with reference to the whole system of law of which they form a part." *Roche v. Young Bros., Inc. of Florence*, 332 S.C. 75, 81, 504 S.E.2d 311, 314 (1998). The medical malpractice statute of repose is part of Title 15, Chapter 3 of the South Carolina Code, which governs "Limitations of Civil Actions." Title 15, Chapter 3 likewise contains a statute of repose for improvements to real property, which provides in relevant part:

> No actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than eight years after substantial completion of the improvement. For purposes of this section an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:
>
> . . .
>
> (6) an action for contribution or indemnification for damages sustained on account of an action described in this section; . . .

*See* S.C. Code Ann. § 15-3-640 (2005 & Supp. 2013).

In my opinion, this section demonstrates that the General Assembly is capable of and will expressly include indemnification claims within a statute of repose when it so desires. The express inclusion of indemnification claims in section 15-3-640—and the absence of any mention of indemnity claims within section 15-3-545—indicates to me that the General Assembly did not intend to bring such claims within section 15-3-545. *See Berkeley Cnty. Sch. Dist. v. S.C. Dep't of Revenue*, 383 S.C. 334 n.15, 679 S.E.2d 913, 925 n.15 (2009) (considering related statutes as relevant because they indicate the "General Assembly knows how to" include a provision when it so desires); *Doe v. Brown*, 331 S.C. 491, 496, 489 S.E.2d 917, 920 (1997) (considering related statutes and concluding that "[t]he clear and unambiguous language of [] these statutes indicates that when the Legislature intended to exclude 'criminal parents' from the adoption process, it did so"); 82 C.J.S. *Statutes* § 478 (2014) ("[W]here a statute contains a given

provision, the omission of such a provision from a similar statute concerning a related subject is significant to show that a different intention has existed.").

## Conclusion

The majority makes a somewhat emotional argument that Providence Hospital should not prevail because the underlying tortious conduct by Drs. Hayes and Taillon occurred "over seventeen years ago." However, the equitable indemnification action at issue here began only three years after Providence Hospital's indemnity claim accrued, upon its settlement with the Sharpes.

For the foregoing reasons, I would hold that section 15-3-545 does not bar an indemnity claim that arises from an underlying medical malpractice action and which commences more than six years after the date of the occurrence. Therefore, I would reverse and remand for further proceedings.

**HEARN, J., concurs.**